NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Sullivan
No. 2020-0322

THE STATE OF NEW HAMPSHIRE

v.

JUSTIN GUNNIP

Argued: November 18, 2021
Opinion Issued: January 28, 2022

Office of the Attorney General, (Zachary L. Higham, assistant attorney general, on the brief and orally), for the State.

Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DONOVAN, J. Following a jury trial in the Superior Court (Tucker, J.), the defendant, Justin Gunnip, was convicted on one count of falsifying physical evidence and one count of conspiracy to commit assault. See RSA 641:6, I (2016). The State appeals the trial court's order setting aside the defendant's falsifying physical evidence conviction. The State argues that the trial court erred as a matter of law by concluding that the defendant did not violate RSA 641:6, I, when he held paper in front of a surveillance camera at the house of corrections in order to prevent the camera from recording the assault. We affirm.

The following facts are undisputed or are supported by the record. In August 2019, the defendant was an inmate at the Sullivan County House of Corrections. On August 17, 2019, another inmate at the facility was assaulted. The room in which the assault occurred was monitored by surveillance cameras capable of capturing video footage of the entire room. The digital recording was saved to a server, which was inaccessible to inmates. The footage from the day of the assault showed the victim sitting on a bench watching television when the defendant and several other inmates entered the room. The defendant approached one of the cameras and held paper in front of the lens, obstructing the camera's view of the room. When the defendant removed the paper, the victim was injured and lying on the floor.

The defendant was charged with one count of conspiracy to commit assault and one count of falsifying physical evidence. At trial, the State introduced into evidence the recording from the day of the assault. With respect to the falsifying physical evidence charge, the State's theory was that the defendant altered the recording by obstructing the camera's lens with paper, thereby preventing the camera from recording the assault. The State presented no evidence that, after the assault, the defendant edited, deleted, or otherwise altered the recording that was saved to the server. After the State rested, the defendant moved to dismiss both charges. The court denied the motions, and the jury convicted him on both charges.

The defendant then moved to set aside the jury's verdicts. The defendant argued, in part, that RSA 641:6, I, "does not reach [his] conduct in this case." Specifically, the defendant asserted that the statute's prohibition is limited to "the physical manipulation of physical existing things" and that "the recording accurately recorded what it recorded and was still intact at the time of trial and was used during the course of the trial as an accurate depiction of what was recorded." The State objected, arguing that "by holding up a piece of paper, [the defendant] altered [the camera's] view such that the recording did not capture what it would have otherwise recorded."

The trial court denied the motion with respect to the conspiracy conviction, but granted it with respect to the falsifying physical evidence conviction. In reaching its decision, the trial court interpreted the word "thing" in RSA 641:6, I, as synonymous with "physical evidence" and determined that, under the statute, the "thing" at issue "must exist" in order for the defendant to falsify it. Concluding that the "thing" at issue here was "the recording maintained on the server in the facility's data room," the court further determined that "[t]here was no evidence the recording was altered and, in fact, the State used [the recording] as an exhibit to prove [the defendant's] role as a conspirator precisely because it accurately portrayed his conduct in connection with the assault." Thus, the court ruled that the evidence was insufficient to prove that the defendant altered, destroyed, concealed, or removed the

2

recording in violation of RSA 641:6, I.  The State moved for reconsideration, and the court denied the motion.  This appeal followed.

On appeal, the State argues that the trial court erred by setting aside the jury's verdict on the grounds that the evidence did "not support" the defendant's falsifying physical evidence conviction.  When reviewing a trial court's decision to set aside the jury's verdict based upon the sufficiency of the evidence, we apply our traditional standard for evaluating the sufficiency of the evidence.  See State v. O'Neill, 134 N.H. 182, 184-85 (1991).  When evaluating the sufficiency of the evidence, we consider whether a rational trier of fact could have found guilt beyond a reasonable doubt, viewing all of the evidence and all reasonable inferences drawn therefrom, in the light most favorable to the State.  State v. Vincelette, 172 N.H. 350, 354 (2019).  Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo.  Id.

Resolving the State's appeal also requires that we interpret the language of RSA 641:6, I.  The interpretation of a statute raises a question of law, which we also review de novo.  See State v. Pinault, 168 N.H. 28, 31 (2015).  In matters of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of the statute considered as a whole.  Id. We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice.  Id.  We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id.  Further, we interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include.  Id.  Finally, we interpret statutes in the context of the overall statutory scheme and not in isolation.  Id.

Turning to the merits, we begin with RSA 641:6, I, which provides, in relevant part:

> A person commits a class B felony if, believing that an official proceeding . . . or investigation is pending or about to be instituted, he:
>
> I. Alters, destroys, conceals or removes any thing with a purpose to impair its verity or availability in such proceeding or investigation.

RSA 641:6, I.

Broadly construing the language of RSA 641:6, I, the State argues that the legislature intended the phrase "any thing" to "encompass[] virtually any subject that a defendant might try to alter."  The State further contends that the "thing" at issue here was not, as the trial court concluded, the recorded

3

footage, but, rather, the "camera's intended view and, by extension, the feed from that view." According to the State, the defendant "altered the camera's view" in violation of RSA 641:6, I, when he held paper in front of the camera's lens and, consequently, prevented the camera from recording the assault.

We disagree with the State's interpretation of the phrase "any thing," as it is used in RSA 641:6, I. Because the statute does not define "any" or "thing," we look to the dictionary for guidance as to the ordinary meaning of those words. See State v. Ruff, 155 N.H. 536, 539 (2007). The word "any" is broadly defined as "one or some indiscriminately of whatever kind." Webster's Third New International Dictionary 97 (unabridged ed. 2002). With respect to the word "thing," however, Webster's Third New International Dictionary contains several varying definitions. See id. at 2376. One definition describes the word "thing" as "whatever exists or is conceived to exist as a separate entity or as a distinct and individual quality, fact, or idea." Id. We acknowledge that this definition is broad, signaling that something as abstract as "the camera's intended view" could fall within the meaning of the word "thing." Another definition, by contrast, defines the word "thing" as "an entity that can be apprehended or known as having existence in space or time as distinguished from what is purely an object of thought." Id. This narrower definition suggests that, despite its inclusion of the word "any," the legislature may have intended the meaning of the word "thing" to exclude mere abstractions that have no physical existence "in space or time," such as "object[s] of thought." Id.

Because these definitions suggest multiple meanings, and because we do not construe statutory language "in isolation," our interpretation of the phrase "any thing" is informed by the statute's other language. K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 180, 185 (2014) (quotation omitted). RSA 641:6, I, requires the State to prove, inter alia, that the defendant acted "with a purpose to impair [the] verity or availability" of the "thing" at issue in a "proceeding or investigation." RSA 641:6, I. This language indicates that, when the legislature enacted the statute, it was concerned with preserving physical evidence for investigatory purposes or for use in subsequent litigation. See Commission to Recommend Codification of Criminal Laws, Report of Commission to Recommend Codification of Criminal Laws § 586:6 cmts. at 92 (1969) ("[I]nstead of protecting the verity of testimony, [RSA 641:6] is designed to deter falsification or concealment of physical evidence or the fraudulent use of such evidence." (emphasis added)). The statute's title — "Falsifying Physical Evidence" — further supports this construction. RSA 641:6 (2016); see Garand v. Town of Exeter, 159 N.H. 136, 142 (2009) ("While the title of a statute is not conclusive of its interpretation, it provides significant indication of the legislature's intent in enacting the statute." (quotation omitted)).

Our decision in State v. Dodds, 159 N.H. 239 (2009), is instructive. In Dodds, the defendant was convicted of violating RSA 641:6, I, based upon

4

evidence that he altered the appearance of his feet in order to make them appear consistent with his statements to law enforcement. Id. at 243, 247-48. On appeal, the defendant argued that his conduct did not fall within the scope of RSA 641:6, I, because his "uninjured feet would likely not have been relevant to an investigation," and, therefore, "altering his feet did not transform them into something relevant." Id. at 245. Addressing this argument, we observed that RSA 641:6, I, "does not require that the evidence falsified be admissible at trial." Id. Nonetheless, we reasoned that, given the circumstances of the case, "any injury [to the defendant's feet] or absence thereof would have been relevant to officials trying to reconstruct what had occurred." Id. We therefore concluded that, regardless of whether the appearance of the defendant's feet was admissible at trial, he violated RSA 641:6, I, by altering their appearance. See id. at 245-47.

Accordingly, we conclude that the meaning of the phrase "any thing," as it is used in RSA 641:6, I, is limited to physical evidence that is capable of either assisting officials in an investigation or being used as evidence at a later proceeding. To qualify as physical evidence, the "thing" at issue must have some tangible quality; mere abstractions, such as thoughts, concepts, or ideas, are insufficient. See People v. Rieger, 436 P.3d 610, 613 (Colo. App. 2019) (defining "physical evidence," in part, as "anything that conveys a firsthand impression to factfinders," such as "weapons, writings, photographs, and charts" (quotation and brackets omitted)); Page v. Com., 149 S.W.3d 416, 421 (Ky. 2004) (defining "physical evidence" as "any article, object, document, record, or other thing of physical substance" (quotation omitted)); 23 C.J.S. Criminal Procedure and Rights of the Accused § 1148, at 595 (2016) ("[P]hysical evidence is evidence addressed directly to the senses of the court or jury without the intervention of the testimony of witnesses, as where various things are exhibited in open court, or an object which relates to or explains the issues or forms a part of a transaction."); see also Webster's Third New International Dictionary, supra at 1706 (defining "physical" as "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary"). Moreover, although the "thing" at issue need not "be admissible at trial," it must have enough evidentiary value such that it is "relevant to officials trying to reconstruct what had occurred." Dodds, 159 N.H. at 245; see Webster's Third New International Dictionary, supra at 788-89 (defining "evidence" as "something that furnishes or tends to furnish proof"); see also Page, 149 S.W.3d at 421-22 (holding that the blood flowing through the defendant's body was not "physical evidence" under a Kentucky statute similar to RSA 641:6, I, because, until the blood was collected for testing, it was "incapable of an analysis that would yield evidence").

We further conclude that the "thing" at issue here was not, as the State contends, "the camera's intended view" or "the feed from that view." The "intended view" of a camera is not physical evidence, but, rather, a mere abstraction, reflecting only the intent of those who installed and maintained

5

the camera to record digital images from a certain angle or of a certain event. As explained above, an abstraction cannot serve as physical evidence of a crime. See, e.g., Rieger, 436 P.3d at 613; Page, 149 S.W.3d at 421. Similarly, the "feed" from the camera's "intended view" — comprised of light reflecting into the camera's lens — lacked the tangible quality necessary to qualify as physical evidence. Critically, without the digital recording, neither "the camera's intended view" nor "the feed from that view" could have assisted officials investigating the assault. Cf. Dodds, 159 N.H. at 245. Thus, the trial court properly ruled that the "thing" at issue was "the recording maintained on the server in the facility's data room" — a tangible medium capable of serving as physical evidence of a crime. See Rieger, 436 P.3d at 614 (holding that "electronically stored, digital images" constitute "physical evidence" under a statute similar to RSA 641:6, I). Indeed, the State introduced the recording as physical evidence of the defendant's participation in the conspiracy.

Having established that the "thing" at issue here was the recorded footage on the server, we conclude that the evidence was insufficient to establish that the defendant altered, destroyed, concealed, or removed the footage. See RSA 641:6, I. At trial, the State presented no evidence that the defendant deleted, edited, altered, or removed the recording stored on the server. As the trial court observed, "[t]he evidence established the recording was intact, and it was used [by the State] as evidence precisely because it showed what the surveillance camera recorded." Thus, even viewing the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the State, no reasonable trier of fact could have found that the defendant altered, destroyed, concealed, or removed the recorded footage. See Vincelette, 172 N.H. at 354.

The State argues, on the other hand, that the defendant altered the footage before it reached the server. According to the State, RSA 641:6, I, "does not specify where or when a defendant's intervention in the process of evidence generation constitutes falsification," and "nothing in [RSA 641:6, I] limits the crime to conduct committed after the creation of the 'thing' at issue." Thus, the State argues, the court "improperly added an additional element . . . beyond what the statute requires" when it construed RSA 641:6, I, to require proof that "the recording pre-existed the defendant's alteration." We disagree.

The plain and ordinary meaning of the language in RSA 641:6, I, presupposes that the "thing" at issue must exist before it can be "[a]lter[ed], destroy[ed], conceal[ed] or remove[d]." RSA 641:6, I; see Pinault, 168 N.H. at 31 (explaining that, when interpreting statutes, "[w]e first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning"). Indeed, as the defendant points out, one cannot alter, destroy, conceal, or remove "a thing that does not yet exist." See RSA 641:6, I; see also Sexton v. Com., 317 S.W.3d 62, 64-65 (Ky. 2010) (concluding that the evidence was insufficient to establish that the defendant violated a

Kentucky statute similar to RSA 641:6, I, by destroying a videotape when "the Commonwealth failed to produce any evidence that [the] videotape . . . even exist[ed]"). Thus, the trial court correctly concluded that the "thing" at issue "must exist in order to be altered."

Here, as explained above, the "thing" at issue was the recorded footage that was saved to the server. That footage did not preexist the defendant's act of obstructing the camera's view; rather, it was created simultaneously with the defendant's act. Therefore, because the "thing" at issue did not exist until the defendant acted, the defendant's act did not alter, destroy, conceal, or remove it. See RSA 641:6, I. Instead, the defendant merely prevented the creation of certain physical evidence — namely, footage capturing the assault. Nothing in the language of RSA 641:6, I, suggests that the statute prohibits conduct that prevents the creation of new physical evidence. To hold otherwise would impermissibly add language to the statute, expanding its scope to potential evidence that does not yet exist in physical form. See Pinault, 168 N.H. at 31. For this reason, we reject the State's contention that the defendant altered the footage at the same time the camera recorded it. Accordingly, we conclude that the trial court properly ruled that the defendant's conduct fell outside the scope of RSA 641:6, I. However, if the legislature disagrees with our construction, it is free, within constitutional limits, to amend the statute as it sees fit.

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.