Rockingham
No. 2007-654

THE STATE OF NEW HAMPSHIRE

v.

PUTNAM BREED

Argued: May 6, 2009
Opinion Issued: July 2, 2009

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief, and *Elizabeth C. Woodcock*, attorney, orally), for the State.

*Hinckley, Allen & Snyder LLP*, of Concord (*Michael J. Connolly* and *Christopher H.M. Carter* on the brief, and *Mr. Carter* orally), for the defendant.

DALIANIS, J. The defendant, Putnam Breed, appeals his convictions following a jury trial in Superior Court (*Nadeau*, J.) of nine counts of fraudulent handling of recordable writings, *see* RSA 638:2 (2007), two counts of theft by deception, *see* RSA 637:4 (2007), and one count of theft by unauthorized taking, *see* RSA 637:3 (2007). We affirm his theft by deception convictions and reverse his convictions for theft by unauthorized taking and fraudulent handling of recordable writings.

The record supports the following facts. The defendant is a medical examiner in Massachusetts. His convictions stem from medical examiner services he provided to Simplicity Burial and Cremation in Salisbury, Massachusetts, and to the Bayview Crematorium (Bayview) in Seabrook, New Hampshire, which were both owned by the same individual. *See Petition of Bayview Crematory*, 155 N.H. 781, 782 (2007).

In July 2005, a grand jury returned nine indictments alleging that the defendant had fraudulently handled recordable writings. *See* RSA 638:2. The "recordable writing" at issue in each indictment was a medical certificate for cremation (cremation certificate). *See* RSA 325-A:3 (2004) (repealed 2006). Seven indictments alleged that the defendant, with a purpose to deceive, had signed certain cremation certificates that falsely indicated that he was a New Hampshire medical examiner. Two indictments alleged that he, with a purpose to deceive, had signed other cremation

certificates indicating that he had viewed certain remains and had made personal inquiry into the cause and manner of death, when, in fact, he had not done so.

In November 2006, a grand jury returned two indictments alleging that the defendant had committed theft by deception, *see* RSA 637:4, and one indictment alleging that he had committed theft by unauthorized taking, *see* RSA 637:3. The theft by unauthorized taking indictment charged the defendant with purposely submitting cremation fee forms to Bayview for authorization and forwarding to the Massachusetts Office of the Chief Medical Examiner in connection with the cremations of twelve decedents who had died and were cremated in New Hampshire even though the defendant was not a New Hampshire-appointed medical examiner. The two theft by deception indictments alleged that, for the purpose of receiving medical examiner fees, the defendant had signed cremation certificates indicating he had viewed the remains of other decedents when he had not done so.

Following a six-day trial, a jury convicted the defendant on all charges. Thereafter, he filed a motion to set aside the verdicts and for a new trial in which he argued, *inter alia*, that his trial counsel was ineffective. The motion was denied, and this appeal followed.

## I. Fraudulent Handling of Recordable Writing Convictions

The defendant first argues that the fraudulent handling of recordable writing statute, RSA 638:2, is unconstitutionally vague. RSA 638:2 provides: "A person is guilty of a class B felony if, with a purpose to deceive or injure anyone, he falsifies, destroys, removes or conceals any will, deed, mortgage, security instrument or other writing for which the law provides public recording." The defendant contends that this statute is impermissibly vague because it fails to give notice that cremation certificates are "other writing[s] for which the law provides public recording."

Although the defendant couches his argument in constitutional terms, in effect, he asserts that the fraudulent handling of recordable writing indictments fail to allege a crime because cremation certificates are not recordable writings within the meaning of the statute. In keeping with our practice of deciding constitutional issues only when necessary, *see State v. Wamala*, 158 N.H. 583, 592 (2009), we will address only the defendant's implied statutory claim because it provides him the relief he seeks.

We review a trial court's statutory interpretation *de novo. State v. Horner*, 153 N.H. 306, 309 (2006). We are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. *State v. Dansereau*, 157 N.H. 596, 598 (2008). When interpreting a statute, we

first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Petition of State of N.H.(State v. Laporte)*, 157 N.H. 229, 231 (2008). We do not strictly construe criminal statutes, however, but rather construe them "according to the fair import of their terms and to promote justice." RSA 625:3 (2007).

In RSA 638:2, the general phrase "other writing for which the law provides public recording" follows an enumerated list that includes wills, deeds, mortgages and security instruments. The principle of *ejusdem generis* provides that, where specific words in a statute follow general ones, the general words are construed to embrace only objects similar in nature to those enumerated by the specific words. *State v. Meaney*, 134 N.H. 741, 744 (1991).

All of the enumerated documents are documents that affect property interests. The law provides for recording of these documents so as to give notice to all persons regarding the status of title to the property at issue. *See* 66 AM. JUR. 2D *Records and Recording Laws* § 40, at 86 (2001). Recording statutes pertaining to deeds and mortgages, for instance, "provide protection for those diligent enough to conduct a search of title records." *Id.* § 82, at 110. Their purpose "is to protect subsequent judgment creditors, bona fide purchasers and bona fide mortgagees against the assertion of prior claims to land based upon any recordable but unrecorded instruments." *Id.* Cremation certificates, on the other hand, do not concern property interests and do not involve a similar need for public notice. Therefore, they are not similar in nature to the enumerated documents, and are not "writing[s] for which the law provides public recording."

Because cremation certificates are not recordable writings within the meaning of the statute, the defendant's conduct did not violate the statute. His fraudulent handling of recordable writing convictions, therefore, must be reversed.

In light of our decision, we need not address the defendant's remaining arguments regarding his fraudulent handling of recordable writing convictions. We now turn to his arguments regarding his convictions for theft by unauthorized taking and theft by deception.

## II. Theft Offenses

### A. Sufficiency

The defendant argues that there was insufficient evidence to convict him of the theft offenses. To prevail upon his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all

of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Evans*, 150 N.H. 416, 424 (2003). When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. *Id.* Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation. *Id.*

### 1. Theft by Unauthorized Taking

We first examine the theft by unauthorized taking charge. A person commits theft by unauthorized taking or transfer "if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." RSA 637:3, I. The theft by unauthorized taking indictment alleged that the defendant improperly obtained money from the Commonwealth of Massachusetts by submitting medical examiner fee forms for examinations he conducted of New Hampshire decedents that should have been, but were not, conducted by a New Hampshire-appointed medical examiner. The defendant argues, and the State does not dispute, that the trial court amended this indictment in its jury instructions by directing the jury to determine if the defendant had the "conscious object to obtain money for services he did not perform."

Considering the evidence and all reasonable inferences to be drawn from it in the light most favorable to the State, we conclude that a rational juror could not have found that the defendant committed this offense. A rational juror could not have found that the defendant did not perform the services for which he received compensation from the Commonwealth of Massachusetts.

■ The State contends that the evidence was sufficient because it establishes that the defendant "did not provide the service[] for which he charged, i.e., an examination that complied with the New Hampshire statutes." The evidence, however, viewed in the light most favorable to the State, does not demonstrate that the defendant's compensation from the Commonwealth of Massachusetts was in any way contingent upon his examinations complying with New Hampshire law. Rather, the evidence shows that the defendant requested and received payment from the Commonwealth of Massachusetts for viewing bodies before they were cremated in New Hampshire and that he, in fact, viewed these bodies. Accordingly, viewing this evidence in the light most favorable to the State, we conclude that a rational juror could not have found that the defendant collected money from the Commonwealth of Massachusetts for services he failed to perform.

## 2. Theft by Deception

We next examine the theft by deception indictments. A person commits the crime of theft by deception "if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof." RSA 637:4, I. Deception includes creating "an impression which is false and which [the] person does not believe to be true." RSA 637:4, II(a). The two theft by deception indictments alleged that the defendant signed cremation certificates indicating he had viewed the remains of certain other decedents when he had not done so, and that he engaged in this conduct for the purpose of receiving medical examiner fees.

Considering the evidence and all reasonable inferences to be drawn from it in the light most favorable to the State, we conclude that a rational juror could have found that the defendant committed these offenses. A rational juror could have found that the cremation certificates that the defendant signed with respect to the decedents named in the indictments were false. A rational juror could also have found that although the defendant claimed to have examined these decedents before they were cremated, he did not do so.

In arguing that the evidence was insufficient to convict him of the theft by deception offenses, the defendant examines each piece of evidence in isolation. When addressing a sufficiency of the evidence argument, however, we view the evidence in context. *Evans*, 150 N.H. at 424. Any conflicts in the evidence were for the jury to resolve. *State v. Wiggin*, 151 N.H. 305, 309-10 (2004). As the trier of fact, the jury was in the best position to measure the persuasiveness and credibility of evidence and was not compelled to believe even uncontroverted evidence. *In re Guardianship of Luong*, 157 N.H. 429, 439 (2008).

Having concluded that the evidence was insufficient to convict the defendant of the theft by unauthorized taking offense, we examine the remainder of the defendant's arguments only as they pertain to the theft by deception charges.

## B. Territorial Jurisdiction

The defendant next argues that the trial court lacked territorial jurisdiction over the theft by deception offenses because they allegedly occurred in the Commonwealth of Massachusetts and because the Commonwealth of Massachusetts was the alleged victim of the thefts.

RSA 625:4, I(a) (2007) allows a person to be convicted under New Hampshire laws if "[e]ither conduct which is an element of the offense or the result which is such an element occurs within this state." "Our statute,

which substantially conforms to the Model Penal Code regarding jurisdiction, brings within its ambit any crime which is committed wholly or partly within this State." *State v. Harlan*, 116 N.H. 598, 605 (1976), *overruled on other grounds by State v. Kelly*, 125 N.H. 484 (1984). The question in this case, therefore, is whether any part of the statutory offense of theft by deception was committed in New Hampshire. We conclude that because this offense was partly committed in New Hampshire, jurisdiction in New Hampshire was proper.

A person commits theft by deception "if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof." RSA 637:4, I. In this case, the defendant is a Massachusetts medical examiner who received fees from Massachusetts for viewing bodies in New Hampshire before they were cremated here. The defendant was alleged to have deceived the Commonwealth of Massachusetts by claiming to view bodies when he, in fact, did not do so. He perpetrated this deception by filling out cremation certificates stating that he viewed the bodies and by submitting medical examiner cremation fee forms requesting payment for these views. The medical examiner cremation fee forms were submitted to Bayview, a New Hampshire entity, for authorization, and then forwarded to the Office of the Chief Medical Examiner in Massachusetts.

■ New Hampshire had jurisdiction over these offenses because the deception itself took place, at least in part, here. The defendant took money from the Commonwealth of Massachusetts by submitting medical examiner fee forms to a New Hampshire entity, Bayview, in New Hampshire, that gave the false impression that he had examined bodies in New Hampshire that he never, in fact, examined.

### C. Joinder with Fraudulent Handling Charges

The defendant next contends that the trial court erred when it joined the theft by deception and fraudulent handling offenses. We will uphold the trial court's decision to join the charges unless we conclude that the decision constitutes an unsustainable exercise of discretion. *State v. Ramos*, 149 N.H. 118, 120 (2003). To show that the trial court's decision is unsustainable, the defendant must demonstrate that the ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

■ Because the defendant does not contend on appeal that Superior Court Rule 97-A governs this case, we examine his joinder arguments under the law as it existed before the rule became effective on January 1, 2008. The law of joinder before Superior Court Rule 97-A became effective gave a defendant an absolute right to sever unrelated charges. *State v. Brown*, 156 N.H. 440, 442 (2007). Related offenses were those that were

based upon the same conduct, a single criminal episode, or a common plan. *Id.* The trial court ruled that joinder was proper in this case because the theft and fraudulent handling offenses were part of a common plan. The defendant contends that this was error because the theft and fraudulent handling offenses were "independent and not mutually dependent or part of a common plan."

The distinguishing characteristic of a common plan is the existence of a true plan in the defendant's mind, which includes the charged crimes as stages in the plan's execution. *Id.* That a sequence of acts resembles a design when examined in retrospect is not enough; the prior conduct must be intertwined with what follows, such that the charged acts are mutually dependent. *Id.*

In *State v. Schonarth*, 152 N.H. 560, 562 (2005), for instance, we upheld the consolidation of seventeen counts of theft by deception, all against the same elderly victim. We ruled that, viewed objectively, the defendant's actions were part of a common plan because they "demonstrated a prior design that included the charged acts as part of its consummation." *Schonarth*, 152 N.H. at 562. Not only did the charges all involve the same victim, but they were also all based upon the defendant's efforts to defraud the victim of his property through increasingly grandiose schemes connected to the defendant's alleged desire to repay his debt to the victim. *Id.*

By contrast, in *Petition of State of New Hampshire (State v. San Giovanni)*, 154 N.H. 671 (2007), we affirmed the trial court's decision to deny the State's motion to join fifteen theft by deception indictments, which all involved different victims. The defendants operated St. Jude's Residence, a supposed drug and alcohol treatment center. *San Giovanni*, 154 N.H. at 672. Certain patients complained that the defendants had obtained their money by creating false impressions about St. Jude's services. *Id.* at 673. Seeking to join fifteen complaints made by fifteen different victims, the State alleged a common plan by the defendants. *Id.* The trial court found that the charges were not part of a common plan because "[t]he defendants could have committed their alleged conduct as to one victim, but not to another, and still succeeded as to the first." *Id.* at 674 (quotation omitted). We upheld this decision, noting that the indictments involved "discrete offenses committed against multiple victims." *Id.* at 676.

In *Brown*, as in *San Giovanni*, we concluded that the charges at issue were not part of a common plan. In that case, the defendant sold drugs on four different occasions to one person who was cooperating with the police, and on two different occasions to another cooperating person. *Brown*, 156 N.H. at 441. All the charges were joined for trial. *Id.* We reversed, observing that "each of the sales committed by the defendant was a

discrete event and involved different people." *Id.* at 443. The sales were not so intertwined as to be mutually dependent because "the success of any individual sale did not depend upon the success of any other sale." *Id.*

In the instant case, we are persuaded that the trial court reasonably could have found that the theft by deception and fraudulent handling charges constituted mutually dependent acts that were part of a prior design. The record supports the trial court's finding that the defendant strove to develop an exclusive relationship with the operators of Bayview to increase the number of examination fees he could collect. To do this, he maximized his availability to the crematory, by, for example, signing cremation certificates when he had not conducted the requisite examinations. The more fraudulent transactions he participated in, the more reliant Bayview's operators became upon his services to carry out their own ends of processing as many bodies as possible. Based upon these findings, the trial court reasonably found that each fraudulent transaction or theft in which the defendant engaged was part of an overarching plan of furthering his increasingly profitable relationship with Bayview, and, in this way, the charges were mutually dependent. The trial court reasonably could have found that the defendant was not merely taking advantage of opportunities as they arose, but instead was "exhibit[ing] forethought and premeditation in his scheming." *Id.* Under these circumstances, we cannot say that the trial court unsustainably exercised its discretion by joining the fraudulent handling and theft by deception charges.

## D. Ineffective Assistance of Counsel

Finally, the defendant contends that the trial court erred when it found that his trial counsel rendered constitutionally effective assistance. Because we have reversed the defendant's convictions for fraudulent handling of recordable writings and theft by unauthorized taking, we address only his ineffective assistance claims that concern his theft by deception convictions.

Both Part I, Article 15 of the State Constitution and the Sixth Amendment to the Federal Constitution guarantee a criminal defendant reasonably competent assistance of counsel. *State v. Kepple*, 155 N.H. 267, 269 (2007). We first address the defendant's claims under the State Constitution, citing federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

To prevail upon a claim for ineffective assistance of counsel, a defendant must show, first, that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case. *State v. Sharkey*, 155 N.H. 638, 640-41 (2007). To meet the first prong of this test, the defendant "must show that

counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To meet the second prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Both prongs of the ineffectiveness inquiry involve mixed questions of law and fact. *State v. Whittaker*, 158 N.H. 762, 768 (2009). Therefore, we will not disturb the trial court's factual findings unless they are not supported by the evidence or are erroneous as a matter of law, and we review the ultimate determination of whether each prong is met *de novo*. *Id.*

The defendant argues that his trial counsel's failure to object to statements in the prosecution's opening and closing arguments was ineffective assistance. He contends that the prosecutor's arguments were improper because they implied that the defendant "was part of a larger conspiracy with Bayview." For example, in his opening statement, the prosecutor told the jury that the defendant "had an exclusive business relationship with Bayview," and that when the police investigated Bayview, they found "a lot of stuff . . . that really shouldn't have been there, and business shouldn't have been conducted in the way it was." In his closing, the prosecutor referred to the "shenanigans at Bayview" and told the jury that the defendant "helped Bayview do their thing." The defendant contends that "[i]t is clear from these arguments that the prosecutor's objective was to try to bolster the State's case against [the defendant by] attempting to portray him as a co-conspirator in the widely publicized atrocities committed by Bayview — conduct in which [he] was not alleged to have played any part." Because of the "inflammatory nature of the wrongful conduct at Bayview," the defendant asserts that "the prejudice of linking [him] to that conduct is obvious."

We first address the prejudice prong of the *Strickland* test. "If the defendant is unable to demonstrate such prejudice, we need not even decide whether counsel's performance was deficient." *State v. Walton*, 146 N.H. 316, 318 (2001) (quotation and ellipsis omitted); *see Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

The defendant's conclusion that any prejudice from the prosecutor's remarks is "obvious," fails to demonstrate "a reasonable probability that the result of the proceeding would have been different," *Walton*, 146 N.H. at 318 (quotation and ellipsis omitted), had his trial counsel objected to the prosecutor's statements. Trial counsel's opening and closing arguments are

not evidence, *see State v. Flynn*, 151 N.H. 378, 390 (2004), and, to the extent that they were improper, they were only marginally so, *see Kepple*, 155 N.H. at 279. Having failed to demonstrate a reasonable probability that the result of his trial would have been different had his counsel objected to the prosecutor's statements, the defendant cannot prevail upon his ineffective assistance claim.

 Because the standard for determining whether a defendant has received ineffective assistance of counsel is the same under both constitutions, necessarily, we reach the same result under the Federal Constitution as we do under the State Constitution. *Id.* at 269.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.