Henniker District Court
No. 2010-171

THE STATE OF NEW HAMPSHIRE

v.

BRIAN A. BEAUCHEMIN

Argued: February 16, 2011
Opinion Issued: March 31, 2011

*Michael A. Delaney*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*E.F. Nappen Attorney At Law PC*, of Concord (*Evan F. Nappen* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Brian A. Beauchemin, appeals his conviction following a bench trial on the violation level offense of baiting for wildlife during the closed season. *See* RSA 207:3-d, I (Supp. 2010); N.H. ADMIN. RULES, Fis 307.01(b). He argues that the Trial Court (*Scheffy*, J.) erred when it denied his motion to suppress and when it ruled that corn and salt-rich mineral blocks are covered substances within the definition of baiting under RSA 207:1, II-a (Supp. 2010). We affirm.

The record reveals the following facts. It is illegal to bait for wildlife between April 15 and August 31. *See* N.H. ADMIN. RULES, Fis 307.01(b). In October 2008, Conservation Officer Delayne Brown investigated the defendant for two deer carcasses hanging in his yard without corresponding registrations. Brown went onto the defendant's porch and knocked on the main door to his house, but received no answer. While on the porch, Brown noticed a possible baiting site and signs of deer activity around the baiting site and took a photograph of the area.

On August 30, 2009, Brown was in Henniker checking on potential illegal pre-season baiting sites. Brown typically spends the last weeks in August patrolling areas heavily concentrated with hunters and game and walks in the woods looking for signs of animals. During his August 30, 2009 rounds,

Brown went back to the area around the defendant's property and discovered whole kernel corn and a salt-rich mineral block in the woods not far from the defendant's residence, and also observed a foot path from the baiting site to his house.

Brown then proceeded toward the defendant's house and observed the defendant walking in his direction carrying two five-gallon buckets full of whole kernel corn. Brown approached the defendant, introduced himself, and asked what he was doing. The defendant responded that he was putting out bait for hunting. Brown informed the defendant that it was closed season and the defendant replied, "I can do whatever I damn want on my own property." Brown explained the laws to the defendant and subsequently wrote him a ticket. The defendant protested that he was only feeding the deer and not baiting them for the purpose of hunting.

Prior to trial, the defendant filed a motion to suppress "evidence unlawfully seized or obtained," arguing that one of the photographs provided in discovery, taken during the 2008 investigation, was taken when Officer Brown was unlawfully on his porch. The State objected, and the trial court ruled that it would deal with the motion to suppress in the context of the trial. Following a bench trial, the defendant was found guilty of baiting during a closed season.

On appeal, the defendant first argues that the trial court erred when it denied his motion to suppress evidence unlawfully obtained in the 2008 investigation. The defendant asserts that the illegal 2008 investigation "was the basis for the investigation in August 2009 in which more evidence was gathered to charge and convict [the defendant] in the present matter."

"When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings unless they lack support in the record or are clearly erroneous," and we review legal conclusions *de novo. State v. Craveiro*, 155 N.H. 423, 426 (2007).

The defendant focuses his entire argument on the 2008 investigation, arguing that Officer Brown took an illegal photograph of his property. He argues that because Officer Brown came back for the 2009 investigation based entirely upon information gathered during the illegal 2008 investigation, the 2009 investigation was tainted and unlawful. The defendant argues that Officer Brown's presence on his porch during the 2008 investigation violated both the officer's statutory authority and his own constitutional right to be secure from unlawful searches and seizures. RSA 206:26, I (Supp. 2010) gives conservation officers the power to "enforce all laws, rules and regulations relating to all wildlife, and to go upon any property outside of buildings, posted or otherwise, in the performance of their duties." The defendant asserts that a conservation officer's powers only allow him to go on property outside of buildings, but do not permit him

to go in or on porches. He argues that because Officer Brown went on his porch, he exceeded his statutory powers. We disagree.

RSA 206:26, I, permits conservation officers to go on any property outside of a building to enforce wildlife rules and regulations, but does not allow them to enter such buildings without a warrant. *See* RSA 206:26, VII (Supp. 2010) (permitting conservation officers to secure and execute search warrants to enter buildings). Here, the defendant's porch is part of the property outside of his house or "building." Officer Brown was therefore within his statutory powers to go on the defendant's porch to enforce all laws, rules, and regulations relating to wildlife.

The defendant also argues that Officer Brown's presence on his porch was a violation of the Fourth Amendment and Part I, Article 19 of the State Constitution. He argues that because Officer Brown did not have a warrant to be on his porch, any observations made from the porch were the fruit of the poisonous tree.

We first address the defendant's argument under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 232-33 (1983). When conservation officers enter private property to conduct an investigation and "restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches)," observations made from these places are not covered by Part I, Article 19. *State v. Orde*, 161 N.H. 260, 266 (2010) (quotation omitted). Here, there was testimony that the porch led to the main door of the defendant's residence. The defendant's porch would certainly be a place "visitors could be expected to go" in order to knock on the front door. Anything observed while on the defendant's porch is not covered by Part I, Article 19, and, thus, we find no violation of the defendant's constitutional rights as a result of Officer Brown's 2008 investigation.

Because the State Constitution is at least as protective of the right to be free from unreasonable searches as the Federal Constitution, *see State v. MacElman*, 149 N.H. 795, 801 (2003), we reach the same result under the Federal Constitution as we do under our State Constitution.

The defendant next argues that the definition of baiting substances set forth in RSA 207:1, II-a does not include corn or a salt-rich mineral block. RSA 207:1, II-a defines baiting as "[t]he act of placing meat, carrion, honey or any other food or ingestible substance capable of luring or attracting coyote, fur-bearing animals, game birds, or game animals with the exception of gray squirrel." The defendant asserts that under the principle of *ejusdem generis*, the only substances included in the baiting definition by the words "other food or ingestible substance" are other substances similar to meat or honey.

We review a trial court's statutory interpretation *de novo*. *State v. Breed*, 159 N.H. 61, 64 (2009). We are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. *State v. Thiel*, 160 N.H. 462, 465 (2010). When interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.*

■ "The principle of *ejusdem generis* provides that, where specific words in a statute follow general ones, the general words are construed to embrace only objects similar in nature to those enumerated by the specific words." *Breed*, 159 N.H. at 65. We note that while in this case the general words in the statute follow the specific ones, we have previously applied *ejusdem generis* to such statutes. *See id.* The defendant argues that because the statute specifically lists meat, carrion, and honey, the only other types of food or ingestible substances that may be included in the definition are those that are similar in kind. He asserts that carrion is a type of meat and, therefore, to fall under the statutory definition of baiting, a food or ingestible substance must be similar to either meat or honey. The defendant reads the statute too narrowly.

■ Here, the general term "food or ingestible substance capable of luring or attracting coyote, fur-bearing animals, game birds, or game animals with the exception of gray squirrel," provides the parameters of the nature of the specific enumerated words. Any food or ingestible substance that is capable of luring or attracting the animals listed in the statute is necessarily an object "similar in nature to those enumerated by the specific words." *Id.* In this case, whole kernel corn and a salt-rich mineral block are both food or ingestible substances that are capable of luring or attracting coyote, fur-bearing animals, game birds, or game animals. As such, both objects come within the statutory definition of baiting under RSA 207:1, II-a.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.